IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ACC CONSULTANTS, INC.,

      Plaintiff,

vs.                                                   Civ. No. 09-1145 JP/RHS

LOGISTICS HEALTH, INC.,

      Defendant,

and

LOGISTICS HEALTH, INC.,

      Counterclaimant,

vs.

ACC CONSULTANTS, INC.,

      Counterdefendant.

<u>MEMORANDUM OPINION AND ORDER</u>

On December 21, 2010, Defendant/Counterclaimant Logistics Health, Inc. (LHI) filed Defendant's Motion for Leave to Amend Affirmative Defenses and Counterclaims (Doc. No. 59) (Motion to Amend).  Having reviewed the briefs and relevant law, the Court determines that the Motion to Amend should be granted in part in that 1) the Court should modify the Scheduling Order (Doc. No. 21) so that the Motion to Amend is considered timely filed; 2) LHI's proposed amendments should be allowed with the exception that LHI cannot add the affirmative defense of negligent inducement; and 3) LHI will have until March 1, 2011 to file an amended answer which complies with the rulings made in this Memorandum Opinion and Order.

*A.  Background*

    *1.  The Pleadings (Including the Proposed Amended Affirmative Defenses and Counterclaims)*

        *a.  The Complaint for Breach of Contract; for Breach of the Implied Covenant of Good Faith and Fair Dealing; and, for Punitive Damages (Doc. No. 1-1) (Complaint), filed Oct. 29, 2009*

In May 2009, Plaintiff/Counterdefendant ACC Consultants, Inc. (ACC) and LHI entered into a Subcontractor Agreement in which ACC agreed to provide on-site dental services as authorized by LHI.  In June 2009, the parties executed a Rider to the Subcontractor Agreement (together known as the 2009 Agreement) which amended paragraph 6 of the Subcontractor Agreement to state that the Subcontractor Agreement

> can be terminated with one hundred eighty (180) days written notice by either party; provided however, LHI reserves the right to terminate this Agreement immediately in the event that its prime contract, under which the Authorized Services are contracted, is terminated or expires.

Complaint at ¶9.  LHI terminated the 2009 Agreement in August 2009 even though LHI's prime contract did not itself terminate or expire.

ACC alleges in the Complaint that LHI's termination of the 2009 Agreement breached the amended paragraph 6.  ACC also alleges that LHI breached the covenant of good faith and fair dealing when LHI purportedly made inaccurate and pretextual statements about ACC in order to avoid the terms of the 2009 Agreement.  Those statements purportedly included that ACC had breached the 2009 Agreement, that ACC willfully disregarded the terms of the 2009 Agreement, and that ACC "showed blatant disregard of performing quality services...."  *Id*. at ¶16.  Finally, ACC alleges that LHI's actions justify an award of punitive damages.

*b.  Defendant Logistic [sic] Health, Inc.'s Answer, Affirmative Defenses, and Counterclaims (Doc. No. 4) (Original Answer, Affirmative Defenses, and Counterclaims), filed Dec. 11, 2009*

LHI answered the Complaint by asserting various affirmative defenses and counterclaims.  LHI contends in the Original Answer, Affirmative Defenses, and Counterclaims that in March 2007 the parties entered into a Subcontractor Agreement (2007 Agreement) in which ACC agreed to provide certain authorized dental services and to document the services it performed on forms provided by LHI.  In paragraph 11 of the 2007 Agreement, ACC also agreed to abide by an Unfair Competition clause which states:

> **UNFAIR COMPETITION**: During the term of this Agreement, Provider shall not compete, promote, participate in or engage in any activity or other business, either directly or indirectly, whether as a partner, contractor, shareholder or otherwise contract with the United States Reserve or United States National Guard or other known customers of LHI to perform any of the Authorized Services.  Notwithstanding this paragraph 11 or any other provision of this Agreement, Provider may, without being deemed to be in breach of this Agreement, negotiate with and/or enter into an agreement with a third party that would enable the Provider to provide the Authorized Services as a partner, contractor, shareholder or otherwise with such third party in the event the prime contract for the provision of the Authorized Services is awarded to such third party instead of LHI.

Original Answer, Affirmative Defenses, and Counterclaims at ¶42.  The parties then amended paragraph 11 in December 2007 to allow ACC "to enter into agreements and negotiate with the United States Reserve and/or National Guard for set aside, minority, small business, or woman-owned business contracts 'for which LHI may not qualify.'" *Id*. at ¶43.

LHI maintains in its first counterclaim that ACC breached paragraph 11 of the 2007 Agreement by, among other actions, "soliciting business from the Army National Guard and attempting to compete with LHI by pursuing LHI's customers." *Id*. at ¶47.  LHI further maintains that ACC breached the 2007 Agreement by failing "to properly document completely

3

and accurately the services provided to patients on the forms as required by the Agreement."  *Id.* at ¶48.  LHI's second counterclaim is for tortious interference with prospective contractual relations.

> *c. Defendant Logistics Health, Inc.'s Amended Answer, Affirmative Defenses, and Counterclaims (Doc. No. 59-3) (Amended Answer, Affirmative Defenses, and Counterclaims) (attached to Motion to Amend)*

LHI now moves under Fed. R. Civ. P. 15(a)(2) to amend its Original Answer, Affirmative Defenses, and Counterclaims to add factual allegations, affirmative defenses, and counterclaims as well as to eliminate the counterclaim for tortious interference with prospective contractual relations.  LHI alleges in the Amended Answer, Affirmative Defenses, and Counterclaims that it recently learned that in April 2009 ACC submitted a bid to the Florida National Guard to provide dental services (the Florida bid).  LHI contends that it "continued to operate under the 2007 Agreement based on its belief that ACC was not competing with LHI...." Amended Answer, Affirmative Defenses, and Counterclaims at ¶48.  Additionally, LHI alleges that the parties engaged in negotiations in May and June 2009 to amend the 2007 Agreement, negotiations which ultimately resulted in the 2009 Agreement.  According to LHI, ACC did not disclose its Florida bid to LHI during the May and June 2009 negotiations although information regarding the Florida bid would have been material to LHI's decision to enter into the 2009 Agreement.

Moreover, LHI maintains in the Amended Answer, Affirmative Defenses, and Counterclaims that the 2009 Agreement has an Unfair Competition provision similar to the one in the 2007 Agreement and that ACC breached that 2009 provision by, among other actions, "soliciting business from the Army National Guard and attempting to compete with LHI by

pursuing LHI's customers.  Further, ACC slacked on it performance of work for LHI, failing to properly and accurately document the services it provided for patients on the forms required by the 2009 Agreement."  *Id*. at ¶51.  LHI claims that it terminated the 2009 Agreement in September 2009 due to those breaches of the 2009 Agreement by ACC.[1]

LHI proposes to add the following affirmative defenses:

36.  Some or all of Plaintiff's claims are barred by Plaintiff's fraud and fraudulent inducement.

37.  Some or all of Plaintiff's claims are barred by Plaintiff's negligence and negligent inducement.

LHI also proposes to add the following counterclaims: 1) that ACC fraudulently induced LHI to not terminate the 2007 Agreement and fraudulently induced LHI to enter into the 2009 Agreement; 2) that the 2009 Agreement should be rescinded to prevent an unjust result; and 3), in the alternative, if the 2009 Agreement is not rescinded, that ACC breached the Unfair Competition provision of the 2009 Agreement and failed to properly document its services on the forms required by the 2009 Agreement.

### 2.  *Relevant Procedural Events*

#### a.  *Pretrial Deadlines*

On April 19, 2010, the parties filed a Joint Status Report and Provisional Discovery Plan (Doc. No. 18) which provided that LHI had until April 23, 2010 to move to amend its pleadings. The Honorable United States Magistrate Judge Robert Hayes Scott entered an Order Adopting Joint Status Report and Provisional Discovery Plan (Doc. No. 22) on April 28, 2010.  Judge

---

[1]ACC contends in the Complaint that LHI terminated the 2009 Agreement in August 2009.

Scott also ordered that discovery terminate on October 15, 2010.  Scheduling Order (Doc. No. 21), filed April 28, 2010.  Judge Scott, however, later allowed ACC until February 28, 2011 to continue its deposition of Angela Hatch. Order Granting in Part and Denying in Part Plaintiff ACC's Motion for Additional Time for the Further Deposition of Defendant's Rule 30B6 Witness, Angela Hatch, and for Costs Associated Therewith (Doc. No. 61), filed Dec. 30, 2010. In addition, Judge Scott extended the time to file pretrial motions until January 14, 2011.  Order on Joint Motion to Enlarge Time to File Pretrial Motions (Doc. No. 52), filed Nov. 29, 2010. The pretrial conference is now set for March 3, 2011 and a bench trial is set for April 4, 2011. *See* Amended Notice of Pretrial Conference, Call of Calendar and Trial (Doc. No. 70), filed Feb. 9, 2011.

### b.  Discovery Matters

On May 28, 2010, LHI served on ACC requests for production numbers 29, 31, and 33 asking that ACC produce documents relating to bids, proposals, and contracts with the United States Army National Guard and any other LHI customers.  *See* Ex. 10 of Appendix/Supplement (Doc. No. 43-4), filed Oct. 21, 2010.   LHI was aware at that time that ACC had in June 2009 submitted a bid to the California Army National Guard.  Not having received any documents responsive to the requests for production, LHI again requested that ACC produce those documents in a follow-up letter dated August 9, 2010.  *Id*. at Ex. 6.

In September 2010, LHI sent Freedom of Information Act (FOIA) requests to the Florida Army National Guard and other state National Guards for documents related to ACC bids or contracts.  As a result of the FOIA requests, LHI obtained documents on October 11, 2010 indicating that in April 2009 ACC had submitted a bid to the Florida Army National Guard to provide dental services.  On October 12, 2010, LHI's counsel sent a letter to ACC's counsel

asking for any further documents relating to ACC bids sent to LHI's customers, including the

United States Reserve and the United States National Guard.  When ACC responded that it had

produced all of its documents on that issue and when further discussions regarding production of

documents proved unfruitful, LHI filed, on October 21, 2010, Defendant's Motion to Compel

Production of Documents, for Additional Time to Depose Plaintiff, and for Costs (Doc. No. 41)

(Defendant's Motion to Compel).  On December 16, 2010, Judge Scott granted Defendant's

Motion to Compel in part.  Judge Scott ordered ACC "to produce all of its documents relating to

bids, proposals, and contract[s] with the United States Army National Guard and any other LHI

customers in response to LHI's Requests for Production numbers 29, 31, and 33" by January 1,

2011.  Order Granting in Part and Denying in Part Defendant's Motion to Compel Production of

Documents, for Additional Time to Depose Plaintiff, and for Costs (Doc. No. 57) at 2.  On

December 14, 2010, ACC finally provided LHI with additional documents related to the Florida

bid.  A week later, LHI filed this Motion to Amend.  ACC opposes the Motion to Amend

arguing that the Motion to Amend is untimely, that granting the Motion to Amend will produce

undue delay and prejudice ACC, and that it would be futile to grant the Motion to Amend to

allow the new affirmative defenses and the new counterclaims.

*B.  Discussion*

　　　　*1.  Fed. R. Civ. P. 16(b)(4): Timeliness of the Motion to Amend*

　　　　The Court notes that the Scheduling Order deadline for LHI to amend its pleadings was

on April 23, 2010. That deadline, which was about eight months prior to LHI filing its Motion to

Amend on December 21, 2010, implicates Rule 16(b)(4).  Rule 16(b)(4) states that a court's

scheduling order "may be modified only for good cause and with the judge's consent."  *See also*

D.N.M. LR-Cv 16.1 ("Modification of deadlines in the Court's scheduling orders and trial

notices, whether or not opposed, requires a showing of good cause and Court approval.").  LHI

relies, however, on the more general January 14, 2011 deadline for the filing of "pretrial"

motions to establish the timeliness of the Motion to Amend.  Although a motion to amend is

arguably a "pretrial" motion, the existence of a specific deadline for filing motions to amend

presumably controls the time for filing motions to amend.

       The Tenth Circuit Court of Appeals has not addressed how Rules 16(b)(4) and 15(a)(2)

should be applied in a case like this where a party wants to amend a pleading after the

scheduling order deadline for amending pleadings has passed. *See U.S. ex rel. Ritchie v.*

*Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (Tenth Circuit explicitly did not

address issue of whether Rule 16(b)(4) must be applied when a party seeks to amend a pleading

beyond the deadline for doing so).  The Honorable United States District Court Judge Martha

Vazquez, however, addressed that precise issue in *Rowen v. New Mexico*, 210 F.R.D. 250, 252

(D.N.M. 2002). Judge Vazquez noted that "several other Courts of Appeals have explicitly held

that a motion to amend a pleading, filed after the deadlines imposed by a scheduling order, is

governed by the 'good cause' standard of Rule 16(b) rather than the more lenient Rule 15(a)

standard." *Id.*  "'The primary measure of Rule 16's "good cause" standard is the moving party's

diligence in attempting to meet the case management order's requirements.'" *Id.* (quoting

*Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001)).  Under this standard, "the Court

may grant leave to modify the pretrial schedule and amend the complaint under Rule 16(b) only

if the schedule 'cannot reasonably be met despite the diligence of the party seeking the

extension.'" *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

1992)).  "'[C]arelessness is not compatible with a finding of diligence and offers no reason for a

grant of relief.'" *Id.* (quoting *Johnson*, 975 F.2d at 609).  The Ninth Circuit in *Johnson*, 975 F.2d

at 609 (citation omitted), a case favorably cited to by Judge Vazquez, further explained that "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." The Court finds Judge Vazquez's rationale in *Rowen* persuasive and will apply the Rule 16(b)(4) standard first to decide if LHI's Motion to Amend should be deemed timely filed.[2]  If LHI succeeds in showing good cause for modifying the Scheduling Order deadline for amending pleadings, then the Court will apply Rule 15(a)(2) to determine if it would be appropriate to grant the Motion to Amend.

Initially, the Court observes that it is odd that the April 19, 2010 Joint Status Report and Provisional Discovery Plan set LHI's motion to amend deadline only four days later on April 23, 2010.  Moreover, Judge Scott did not adopt the Joint Status Report and Provisional Discovery Plan until April 28, 2010, after LHI's deadline for filing a motion to amend had passed. Considering this rather bizarre situation, the Court determines that LHI could not have reasonably met the April 23, 2010 deadline for filing a motion to amend.  Specifically, no amount of diligence on LHI's part could have resulted in the discovery of the basis of the Motion to Amend (namely, the Florida bid) in the four days preceding April 23, 2010.  Good cause, therefore, exists to extend LHI's deadline for filing a motion to amend.  The Motion to Amend will be considered timely filed.

---

[2]The Court notes that the Honorable United States District Court Judge M. Christina Armijo has also adopted Judge Vazquez's reasoning and analysis in *Rowen* regarding the interplay of Rules 16(b)(4) and 15(a)(2).  *See, e.g., Miller ex rel. S.M. v. Board of Educ. of Albuquerque Public Schools*, 455 F.Supp.2d 1286, 1304 (D.N.M. 2006).

*2. Rule 15(a)(2): the Motion to Amend*

Although Rule 15(a)(2) typically applies when a plaintiff moves to amend a complaint, Rule 15(a)(2) likewise applies when a defendant seeks to amend an answer to add an affirmative defense. *See Ward Petroleum Corp. v. Federal Deposit Ins. Corp.*, 903 F.2d 1297, 1301 (10th Cir. 1990) (defendant did not raise fraud as an affirmative defense but on remand district court may allow defendant to amend pleadings to include that affirmative defense). *See, also, Jones v. District of Columbia Dept. of Corrections*, 429 F.3d 276, 282 (D.C. Cir. 2005) (citation omitted); *Robinson v. Sappington*, 351 F.3d 317, 332 (7th Cir. 2003); *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). Rule 15(a)(2) also applies when a defendant moves to amend an answer to add a counterclaim. *See* 2009 Amendments Notes to Fed. R. Civ. P. 13 ("An amendment to add a counterclaim will be governed by Rule 15."). Accordingly, case law addressing the issue of whether a plaintiff can amend a complaint applies equally to the issue of whether a defendant can amend an answer to include an affirmative defense or counterclaim.

Rule 15(a)(2) provides that a party may amend its pleadings only by leave of the court or by written consent of the adverse party, and that leave will be freely given when justice requires. The driving principle behind Rule 15(a)(2) is to decide the claims on the merits rather than on procedural grounds. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). Leave to amend should be granted unless the party opposing the motion has a made a showing of undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of a motion to amend is within the sound discretion of the trial court. *Id.*

10

a.  *Undue Delay*

ACC argues first that the Motion to Amend should be denied because LHI has not offered a credible explanation for its undue delay in filing the Motion to Amend.  The fact that a motion to amend is filed late does not by itself justify the denial of a motion to amend.  *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)).  However, denial of a motion to amend is appropriate if the movant does not provide an adequate explanation for the delay.  *Id*. at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  Unlike other courts of appeal, the Tenth Circuit "focuses primarily on the reasons for the delay."  *Id*.  Additionally, the party opposing a motion to amend need not show prejudice as a result of the delay.  *See*, *e.g.*, *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).  Examples of undue delay include when "a plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay[] raising [an] issue until the eve of trial[]...."  *Minter*, 451 F.3d at 1206 (internal quotation marks and citations omitted).  Undue delay also occurs when a "'plaintiff was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint.'"  *Id*. at 1207 (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998)).  *See also Sipp v. Unumprovident Corp.*, 107 Fed. Appx. 867, 877 (10th Cir. 2004) (unpublished decision) ("Denial of leave to amend is particularly appropriate in cases in which the cause(s) of action were available to the plaintiff at the time that the original complaint was filed."); *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them

11

in the original complaint, the motion to amend is subject to denial.").

      ACC contends that LHI must have known about the Florida bid as early as May 28, 2010 when LHI requested ACC to produce documents related to the Florida bid.  ACC further contends that LHI must have known about the Florida bid by September 2010 in order for LHI to have submitted a FOIA request to the Florida National Guard in September 2010.  Finally, ACC notes that it is undisputed that LHI knew about the Florida bid at the very latest by October 11, 2010 when it received the FOIA documents from the Florida National Guard.  ACC points out that, nonetheless, LHI still waited over two months to file the Motion to Amend on December 21, 2010.

      LHI, however, argues convincingly that it did not know about the Florida bid prior to October 11, 2010 and LHI gives an adequate explanation for waiting until December 21, 2010 to file the Motion to Amend.  LHI asserts that when LHI submitted to ACC the requests for production of bid documents on May 28, 2010, it was aware only of a June 2009 ACC bid award concerning the California Army National Guard.  Consequently, at that time LHI suspected that ACC may have made bids and proposals to other state National Guards, but LHI's request for production of bid documents was not based on any specific knowledge of the Florida bid.  LHI explains that it submitted a FOIA request not only to the Florida Army National Guard but also to other state National Guards in an attempt to discover undisclosed breaches of the Unfair Competition clause.  Obviously, LHI was fishing for information and in September 2010 LHI did not know that the Florida bid existed.  Moreover, after LHI received the FOIA documents on October 11, 2010, LHI sought to discover additional information from ACC regarding the Florida bid by sending a letter dated October 12, 2010 to ACC's counsel requesting production of bid documents, and by filing on October 21, 2010 a motion to compel production of those

documents.  Judge Scott did not rule on Defendant's Motion to Compel until December 16,

2010, when he ordered ACC to produce bid, proposal, and contract documents by January 1,

2011.  On December 14, 2010, ACC provided LHI with additional documents related to the

Florida bid.  A week later, LHI filed this Motion to Amend.

It clearly appears that LHI did not know about the Florida bid until October 11, 2010.

Furthermore, LHI diligently pursued discovery regarding the Florida bid between October 12,

2010 and December 21, 2010, the date of the filing of the Motion to Amend.  Hence, LHI has

offered an adequate explanation for filing the Motion to Amend on December 21, 2010.  ACC's

undue delay argument, therefore, fails.

### b. Prejudice to ACC

ACC also argues that the Motion to Amend should be denied because ACC will suffer

prejudice if the Court grants the Motion to Amend.  "Courts typically find prejudice only when

the amendment [of a complaint] unfairly affects the defendants 'in terms of preparing their

defense to the amendment.'  Most often, this occurs when the amended claims arise out of a

subject matter different from what was set forth in the complaint and raise significant new

factual issues." *Minter*, 451 F.3d at 1208 (citations omitted).  For instance, prejudice can occur

when a proposed amendment adds a new cause of action involving different questions of fact or

law, adds new parties, or requires the reopening of discovery.  *See United States ex rel. Ritchie v.*

*Lockheed Martin Corp.*, 558 F.3d 1161, 1167 (10th Cir. 2009); *State Distributors, Inc. v.*

*Glenmore Distilleries Co.*, 738 F.2d 405, 417 (10th Cir. 1984);  *A.E. v. Mitchell*, 724 F.2d 864,

868 (10th Cir. 1983).

ACC notes that discovery is closed (except for the deposition of Angela Hatch) and

argues that the proposed amendments would require reopening discovery and delaying the trial

13

date.  ACC further notes that if the Court grants the Motion to Amend more than a year would

have passed since the Complaint was filed.  The Court agrees that if it grants the Motion to

Amend limited discovery would probably be needed and the trial date might have to be reset.

However, whatever harm ACC may suffer if the Court grants the Motion to Amend is of its own

making.  If ACC had timely produced documents requested by LHI in May 2010, LHI could

have filed the Motion to Amend well before discovery initially was scheduled to end on October

15, 2010 and there would have been no need to reset the trial date.  Furthermore, it is noteworthy

that even after LHI informed ACC of the FOIA documents in early October 2010, ACC

continued to refuse to produce documents related to the Florida bid and other bids, thereby

forcing LHI to file Defendant's Motion to Compel which Judge Scott subsequently granted in

part.  Obviously, the consequences of ACC's own lack of cooperation in the discovery process

cannot now constitute prejudice for Rule 15(a)(2) purposes.  *See, e.g., Minter*, 451 F.3d at 1211

("Whatever harm befalls Prime Equipment ... is of its own making, and therefore does not

qualify as prejudice under Rule 15(a).").

> c. *Futility*

Finally, ACC asserts that the Motion to Amend should be denied on the basis of futility.

ACC argues that 1) LHI waived the new affirmative defenses when LHI failed to initially plead

those affirmative defenses in its Original Answer, Affirmative Defenses, and Counterclaims; 2)

the fraud and the fraudulent inducement affirmative defenses as well as the fraudulent

inducement counterclaim fail to state either a plausible affirmative defense or a plausible

counterclaim under Fed. R. Civ. P. 12(b)(6); 3) the affirmative defense of negligent inducement

fails to state a plausible Rule 12(b)(6) affirmative defense; and 4) the rescission counterclaim

fails to state a plausible counterclaim under Rule 12(b)(6).

14

*(1) Failure to Plead Affirmative Defenses in Original Answer, Affirmative Defenses, and Counterclaims*

Although a defendant is required under Fed. R. Civ. P. 8(c) to affirmatively plead "any avoidance or affirmative defense," a party who discovers new evidence which forms the basis of an affirmative defense must move to amend the pleadings under Rule 15(a)(2) to present that affirmative defense. *See Ward Petroleum Corp.*, 903 F.2d at 1301. This is the precise procedure LHI is employing to add its new affirmative defenses. Consequently, ACC's argument that LHI waived the new affirmative defenses by not including them in its Original Answer, Affirmative Defenses, and Counterclaims is without merit.

*(2) Application of Rule 12(b)(6)*

ACC further argues that the fraud based affirmative defenses and counterclaim, the negligent inducement affirmative defense, and the rescission counterclaim are futile because they would not survive a Rule 12(b)(6) motion to dismiss. A motion to amend is futile if it would be subject to dismissal for any reason, including that the amendment would not survive a Rule 12(b)(6) motion to dismiss. *See, e.g., Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Nonetheless, the futility issue is approached somewhat differently when a defendant moves to amend an answer to add an affirmative defense. In that situation, futility is examined in the context of a motion to strike under Fed. R. Civ. P. 12(f) which states that "[t]he court may strike from a pleading an insufficient defense...." *See Luvata Buffalo, Inc. v. Lombard General Ins. Co. of Canada*, 2010 WL 826583 *8 (W.D. N.Y.) (unpublished opinion) (quoting *Children First Foundation, Inc. v. Martinez*, 631 F.Supp.2d 159, 168-69 (N.D. N.Y. 2007)). The Tenth Circuit has not indicated whether a Rule 12(b)(6) standard applies in deciding whether to strike an

15

affirmative defense under Rule 12(f).  Several federal district courts, however, have held that a Rule 12(b)(6) standard should apply.  *See, e.g., Butler v. Source Unlimited, Inc.*, 2010 WL 4789655 *1 (W.D. Okla.) (unpublished opinion) (applying Rule 12(b)(6) standard to Rule 12(f) motion to strike); *Children First Foundation, Inc. v. Martinez*, 2007 WL 4618524 *4 (N.D. N.Y.) (unpublished opinion) (in analyzing futility of affirmative defense, district court referred to Rule 12(f) and applied Rule 12(b)(6) standard).  See *also American Book Co. v. Consolidated Group of Companies, Inc.*, 2011 WL 11969 *1 (E.D. Tenn.) (unpublished opinion) (applying Rule 12(b)(6) to determine if motion to amend answer to add affirmative defense is futile) (quoting *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 2008 WL 361258 *6 (M.D. Tenn.) (unpublished opinion) (citation omitted)).  The Court agrees with the analyses of those courts and will apply a Rule 12(b)(6) standard to decide if it would be futile to bring a new affirmative defense.  Lastly, it is well-established that counterclaims are subject to a Rule 12(b)(6) review.  *See, e.g., Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

Under Rule 12(b)(6), a court may strike an affirmative defense or dismiss a counterclaim for "failure to state a claim upon which relief can be granted."  In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations as true and views them in the light most favorable to the non-movant.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that the affirmative defense or counterclaim set forth the grounds of entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the affirmative defense or counterclaim does not need to include detailed factual allegations, "factual allegations must be enough to raise a right

16

to relief above the speculative level." *Id.* In other words, the striking of an affirmative defense

or the dismissal of a counterclaim under Rule 12(b)(6) is proper only where it is obvious that the

defendant failed to set forth "enough facts to state a claim to relief that is plausible on its face."

*Id.* at 570.  In the context of a motion to dismiss a claim in a complaint, the United States

Supreme Court has stated:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

> *(a) Affirmative Defenses of Fraud and Fraudulent Inducement, and*
> *the Fraudulent Inducement Counterclaim*

In New Mexico, an action for fraud or fraudulent inducement occurs when "a false

representation was made, either knowingly or recklessly, with the intent to deceive, for the

purpose of inducing the other party to act, and that the other party did rely and act on it to his

17

own injury."[3]  *Wirth v. Commercial Resources, Inc.*, 96 N.M. 340, 345, 630 P.2d 292, 297 (Ct. App. 1981).  "An omission as well as an act, may constitute fraud.  When one is under the duty to speak, but remains silent and so fails to disclose a material fact, he may be liable for fraud."  *Id*.  "A duty to disclose may arise if there is knowledge that the other party to a contemplated transaction is acting under a mistaken belief.  A duty to disclose may also arise if one has superior knowledge that is not within the reach of the other party or could not have been discovered by the exercise of reasonable diligence."  *Krupiak v. Payton*, 90 N.M. 252, 253, 561 P.2d 1345, 1346 (1977).  ACC contends that LHI has failed to plead with particularity facts which show an intent by ACC to deceive LHI and which show that LHI would be entitled to recoverable damages flowing from the alleged fraud.[4]  ACC also contends that the Florida bid was actually permitted under the Unfair Competition clause.

---

[3]Both parties refer to New Mexico law in addressing the futility questions although LHI acknowledges that Wisconsin law might actually apply because LHI was in Wisconsin when it negotiated the 2009 Agreement, and the parties stipulated in the Joint Status Report and Provisional Discovery Plan at 2 that the governing law is Wisconsin law.  Because the parties have relied on New Mexico law in their briefs, the parties have essentially waived the application of Wisconsin law, at the very least, to the Motion to Amend.  *See, e.g., Casio, Inc. v. S.M. & R. Co., Inc.*, 755 F.2d 528, 531 (7th Cir. 1985) ("Parties can within broad limits stipulate the substantive law to be applied to their dispute, and that is what we deem them to have done here by not objecting to the district judge's application of the substantive law of Illinois to their dispute."); *In re Maxcy*, 45 B.R. 268, 270 (D. Mass. 1985) ("Although the agreement specifically provides that New Hampshire law applies to the contract, the parties waived any right to assert that New Hampshire law applies because both claimant and the objecting party in their oral arguments and briefs argued under Massachusetts law."); *Leasecomm Corp. v. Datalink Resources Corp.*, 2002 WL 31010989 *4 (N.Y. City Civ. Ct.) (unpublished opinion), *reversed on other grounds by* 766 N.Y.S.2d 747 (2003) ("[D]espite a contractual designation of a foreign state's law, parties can waive such a choice of law provision, even by conduct, such as their litigation attorneys briefing legal issues under New York law.").

[4]Fed. R. Civ. P. 9(b) states:  "In alleging fraud ..., a party must state with particularity the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

With respect to the intent issue, LHI asserts that its "allegations that ACC was aware of the Florida Bid, that the Florida Bid breached the parties' agreement and was material to the negotiation of a new agreement, and that ACC failed to disclose such information despite a duty to do so are sufficient to satisfy the intent element of fraudulent inducement by non-disclosure." Defendant's Reply in Support of Motion for Leave to Amend Affirmative Defenses and Counterclaims [Dkt. No. 59] (Doc. No. 65) (Reply) at 6-7, filed Jan. 21, 2011. *See also* Amended Answer, Affirmative Defenses, and Counterclaims at ¶¶48, 50, 54-57. The Court agrees. Accepting LHI's factual contentions as true and viewing those contentions in the light most favorable to LHI, the Court finds the factual contentions in the Amended Answer, Affirmative Defenses, and Counterclaims demonstrate that it is plausible that ACC had a duty to LHI to disclose the Florida bid, a fact material to the negotiation of the 2009 Agreement, because either ACC allegedly knew that LHI was negotiating the 2009 Agreement under the mistaken belief that ACC had not made the Florida bid, or ACC had superior knowledge not within the reach of LHI which LHI could not have uncovered by use of reasonable diligence. These factual contentions support the intent element of fraud or fraudulent inducement under New Mexico law. *See, supra, Wirth,* 96 N.M. at 345, 630 P.2d at 297; *Krupiak,* 90 N.M. at 253, 561 P.2d at 1346.

Although LHI alleges in the Amended Answer, Affirmative Defenses, and Counterclaims at ¶59 that its damages from the fraud "include LHI's costs associated with having to defend this lawsuit relating to its termination of the 2009 Agreement only a few months after it was fraudulently induced to enter into it," ACC claims that these damages do not flow from the alleged fraud. LHI explains in the Amended Answer, Affirmative Defenses, and Counterclaims that "[a]n award of such damages to LHI is necessary to restore LHI to the position it would

19

have been if it had not been fraudulently induced to enter into the 2009 Agreement." *Id*.

Moreover, LHI seeks a rescission of the 2009 Agreement.  The Court determines that LHI has

adequately alleged in the Amended Answer, Affirmative Defenses, and Counterclaims that it

plausibly suffered damages as a result of the alleged fraud or fraudulent inducement.

Finally, ACC's contention that the Florida bid did not constitute a breach of the Unfair

Competition clause is simply not relevant to whether LHI's allegations in the Amended Answer,

Affirmative Defenses, and Counterclaims support plausible affirmative defenses of fraud and

fraudulent inducement and a plausible fraudulent inducement counterclaim.  ACC's attack on the

merits of the fraud based affirmative defenses and counterclaim is properly brought in a motion

for summary judgment or at trial.  In sum, LHI has alleged sufficient facts to support plausible

fraud related affirmative defenses and a plausible fraudulent inducement counterclaim.  Hence, it

would not be futile for LHI to bring the affirmative defenses of fraud and fraudulent inducement

and the fraudulent inducement counterclaim.  The Motion to Amend should be granted as to

those affirmative defenses and that counterclaim.

### (b) Affirmative Defense of Negligent Inducement

ACC asserts that it would be futile to raise the affirmative defense of negligent

inducement because New Mexico case law does not recognize that defense.  LHI does not

address this assertion in its response brief.  LHI's failure to address the issue of futility with

respect to the affirmative defense of negligent inducement leads the Court to conclude that LHI

agrees with ACC that it would be futile to bring that affirmative defense.  *See* D.N.M. LR-Cv

7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the

time prescribed for doing so constitutes consent to grant the motion."; D.N.M. LR-Cv 7.3(a) ("A

... response ... must cite authority in support of the legal positions advanced." Consequently, the

20

Motion to Amend will be denied as to the negligent inducement affirmative defense.

*(c) Rescission Counterclaim*

Lastly, ACC argues that it would be futile to bring the rescission counterclaim because it would fail for the same reasons that the fraudulent inducement counterclaim should fail.  Since the Court concluded that the fraudulent inducement counterclaim is appropriate, ACC's argument is not persuasive.  Furthermore, LHI brings the rescission counterclaim as an independent counterclaim regardless of whether fraud is found.  *See* Amended Answer, Affirmative Defenses, and Counterclaims at ¶64 ("the 2009 Agreement should be equitably rescinded to prevent an unjust result, regardless of whether ACC's nondisclosure is found to be fraudulent.").  In New Mexico, "rescission may be allowed in certain cases of non-fraudulent, but material, nondisclosure."  *McElhannon v. Ford*, 2003-NMCA-091 ¶15, 134 N.M. 124.  LHI has stated a plausible counterclaim for rescission that is not futile. The Motion to Amend will be granted as to the rescission counterclaim.

C. *Conclusion*

First, the Court will modify the Scheduling Order under Rule 16(b)(4) so that the Motion to Amend is considered timely filed.  Second, the Court will, under Rule 15(a)(2), grant the Motion to Amend in part.  LHI will be have until March 1, 2011 to amend its Original Answer, Affirmative Defenses, and Counterclaims in accordance with the rulings made in this Memorandum Opinion and Order.

IT IS ORDERED that:

1.  Defendant's Motion for Leave to Amend Affirmative Defenses and Counterclaims (Doc. No. 59) is granted in part;

2.  the Scheduling Order is modified so that Defendant's Motion for Leave to Amend Affirmative Defenses and Counterclaims (Doc. No. 59) is deemed timely filed;

3.   LHI is permitted to amend the Original Answer, Affirmative Defenses, and Counterclaims as it proposes with the exception that LHI is not allowed to add the affirmative defense of negligent inducement; and

4.  LHI must file by March 1, 2011 an amended Answer, Affirmative Defenses, and Counterclaims which complies with the rulings made in this Memorandum Opinion and Order.


_____

SENIOR UNITED STATES DISTRICT JUDGE