IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ACC CONSULTANTS, INC.,

    Plaintiff,

vs.                                                     Civ. No. 09-1145 JP/RHS

LOGISTICS HEALTH, INC.,

    Defendant,

and

LOGISTICS HEALTH, INC.,

    Counterclaimant,

vs.

ACC CONSULTANTS, INC.,

    Counterdefendant.

MEMORANDUM OPINION AND ORDER

On January 14, 2011, Defendant/Counterclaimant Logistics Health, Inc. (LHI) filed Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 64) (Motion for Summary Judgment). Having reviewed the briefs and relevant law, the Court concludes that the Motion for Summary Judgment should be granted in part in that summary judgment should be granted in LHI's favor as to ACC's punitive damages claim (Count III of the Complaint for Breach of Contract; for Breach of the Implied Covenant of Good Faith and Fair Dealing; and, for Punitive Damages (Doc. No. 1-1) (Complaint)), and as to ACC's request in the Complaint for an award of attorney's fees.

*A. Background*

    *1. Summary of Facts*[1]

Unless otherwise noted, the following facts are undisputed.

    *a. The Contractual Relationship Between Plaintiff/Counterdefendant ACC Consultants, Inc. (ACC) and LHI*

From 2003 until August 2009, ACC and LHI entered into a series of subcontractor agreements in which ACC agreed to provide dental services for LHI's customers including the United States National Guard. LHI is considered a large business while ACC is considered a small business. In May and June 2009, LHI and ACC negotiated an updated Subcontractor Agreement resulting in LHI submitting a new proposed Subcontractor Agreement to ACC. Before the new Subcontractor Agreement could be signed and executed, the parties agreed to several changes. On June 17, 2009, the parties signed a Rider to Subcontractor Agreement (Rider) which adopted and amended the unsigned Subcontractor Agreement (collectively, the 2009 Agreement). LHI wrote the Rider.

The 2009 Agreement contains an unfair competition clause, paragraph 11, to prevent ACC from unfairly competing with LHI for its customers. The unfair competition clause states:

> During the term of this Agreement, and for a period of one year following the termination of this Agreement by either party for any reason, Provider shall not compete, promote, participate in or engage in any activity or other business, either directly or indirectly, whether as a partner, contractor, shareholder or otherwise contract with the United States Reserve or United States National Guard or other known customers of LHI to perform any of the Authorized Services. Notwithstanding this paragraph 11 or any

---

[1] The Court notes that LHI violated D.N.M. LR-Cv 10.6 which requires a party to mark "[t]he portions of an exhibit the party wishes to bring to the Court's attention...." The "[m]arking must be apparent on exhibits that are scanned and filed and/or served electronically so that, when printed in hard copy, the reader can clearly see what is marked to read and the text can be easily read." *Id*. Although the Court will not sanction LHI at this time for its violation of D.N.M. LR-Cv 10.6, any future violations of that rule will result in sanctions.

> other provision of this Agreement, Provider may, without being deemed to be in breach of this Agreement, negotiate with and/or enter into an agreement with a third party that would enable the Provider to provide the Authorized Services as a partner, contractor, shareholder or otherwise with such third party in the event (i) the Prime Contract for the provision of the Authorized Services is awarded to such third party instead of to LHI or (ii) LHI is disqualified from or otherwise elects not to pursue the business opportunity that is the subject of an agreement between Provider and a third party.

Ex. D at 3 (Doc. No. 64-4). Furthermore, the 2009 Agreement has a termination clause, paragraph 6, which provides that the 2009 Agreement

> can be terminated with one hundred eighty (180) days written notice by either party; provided however, LHI reserves the right to terminate this Agreement immediately in the event that its prime contract, under which the Authorized Services are contracted, is terminated or expires.

*Id*. at 1. The 2009 Agreement also includes a choice of law provision, paragraph 18(f), that states that Wisconsin law will govern the 2009 Agreement.

> b. *Award of the California Army National Guard Contract (California Contract) to ACC*

On May 27, 2009, the California Army National Guard posted a bid solicitation for mobile dental services, i.e., the California contract. Although the bid solicitation states that it is set aside for "Total Small Business," the bid solicitation also states that

> in the event there is not enough competition from small businesses, quotes from large businesses will be accepted. ... [A]ny award for dental services resulting from this solicitation, will be made on a competitive basis to eligible small business concerns, provided that a minimum of four (4) competitive (technical and cost) offers are received from eligible small business concerns. If a minimum of four (4) offers from qualified small business concerns are not received, the award for dental services will be made on the basis of full and open competition from among all responsible business concerns submitting offers.

Ex. F at 1-2 (Doc. No. 64-6). Bids on the California contract were due on June 26, 2009 and the contact person for the bid solicitation was Stella Davis, the contracting officer for the California Army National Guard.

3

In early June 2009, Ms. Davis either informed Suzanne Witt, corporate counsel for LHI, of the upcoming bid solicitation on the California contract or told Ms. Witt that LHI was "invited" to participate in the bidding process for the California contract.[2]  LHI believed it was worthwhile to submit a bid on the California contract because Ms. Davis had "invited" LHI to submit a bid and because LHI did not believe that four small businesses would have the capacity to bid on the California contract.  LHI subsequently submitted a bid on the California contract on June 26, 2009.

At least a day before LHI submitted its California bid, Angela Hatch, an LHI Provider Network Manager, informed ACC that LHI intended to submit a bid proposal on the California contract.  Ms. Hatch also asked ACC to submit subcontractor pricing for the California bid.  Ms. Hatch explained to ACC that although the California contract was a small business set aside, LHI's bid might nonetheless be considered.  Ms. Hatch contends that ACC did not inform LHI that it also intended to submit a bid proposal on the California contract.[3]  Ms. Hatch further contends that LHI did not know about the ACC bid until after the California contract was awarded to ACC.

In addition to Ms. Hatch's communications with ACC, Virginia Berger, ACC's corporate representative, spoke with Angela Nundhal, LHI's Provider Services Account Manager, early on June 25, 2009 regarding an email from Ms. Nundhal asking for subcontractor pricing for LHI's

---

[2]On March 4, 2011, the Court denied ACC's Motion to Strike Affidavit of Suzanne Witt (Doc. No. 64-11) Filed in Support of Defendant LHI's Motion for Summary Judgment (Doc. No. 64), (Doc. No. 69).  Memorandum Opinion and Order (Doc. No. 87).

[3]ACC had previously performed work for the California Army National Guard under a subcontract with LHI.  ACC's California bid was, however, the first time ACC had directly bid on a California Army National Guard contract.

bid on the California contract.  Ms. Berger told Ms. Nundhal that ACC had already responded to the California bid solicitation as a small business. ACC, in fact, submitted its own bid the next day on June 26, 2009.

Ms. Berger spoke again with Ms. Nundhal on June 26, 2009.  According to Ms. Berger, Ms. Nundhal did not tell her that LHI was definitely going to bid on the California contract. Ms. Berger testified at her deposition that ACC did not know about the LHI bid on the California contract until after ACC had submitted its own bid on that contract.

The California Army National Guard received only four complete bids from small businesses. Because the California Army National Guard received four small business bids, the California Army National Guard did not consider any bids from large businesses, including LHI's bid.  The California Army National Guard ultimately awarded the California contract to ACC and another small business.  ACC acknowledged that it would not have withdrawn from bidding on the California contract had LHI indicated to ACC that ACC's bid on the California contract would breach the 2009 Agreement's unfair competition clause.

### c. ACC's Attendance at a Force Health Protection Conference

In August 2009, a week long Force Health Protection Conference was held in Albuquerque, New Mexico.  Unbeknownst to LHI, ACC had a booth at the Force Health Protection Conference for a day or two.  Force Health Protection is one of LHI's largest customers.  According to Ms. Hatch, "National Guard and other LHI customers are always in attendance at the Force Health Protection Conference."  Affidavit of Angela Hatch at ¶12, Ex. B (Doc. No. 64-2).  However, ACC promoted only its small woman-owned set aside business at the Force Health Protection Conference and informed people that ACC is a provider for the

Reserve Health Readiness Program (RHRP).[4]  ACC did not acquire any new business as a result of attending the Force Health Protection Conference.

### d. LHI's Termination of the 2009 Agreement

Ms. Hatch indicates that LHI decided to terminate the 2009 Agreement because ACC breached the 2009 Agreement by bidding on the California contract, by performing services at Dobbins Air Force Base where discrepancy rates were "astronomical," by participating at the Force Health Protection Conference, and by submitting a "Delaware" bid after ACC had stated to LHI that it would not submit a bid.  Deposition of Angela Hatch at 18, Ex. A (Doc. No. 72-1).  On August 24, 2009, LHI sent a letter to ACC informing ACC that LHI was terminating the 2009 Agreement effective immediately.  Contrary to Ms. Hatch's deposition testimony, the letter presented only two reasons for the termination: 1) "the event documentation received from ACC for the Dobbins Air Force Base August 1, 2009 group dental event had a 100% discrepancy rate;" and 2) ACC's presence at the Force Health Protection Conference violated the unfair competition clause.  Ex. J (Doc. No. 64-10).  According to Ms. Hatch, "LHI did not give ACC notice and an opportunity to cure before terminating the Subcontractor Agreement and did not believe that cure was possible under the circumstances."  Affidavit of Angela Hatch at ¶14.

### 2. The Complaint

ACC alleges in Count I of the Complaint that LHI breached the 2009 Agreement's termination clause when LHI submitted the August 2009 termination letter without a 180 day notice.  ACC alleges in Count II of the Complaint that LHI breached the covenant of good faith and fair dealing when LHI purportedly made inaccurate and "pretextual" statements about ACC

---

[4]LHI has a prime contract which provides medical and dental services under the RHRP.

in order to avoid the terms of the 2009 Agreement. Those statements allegedly included that ACC had breached the 2009 Agreement, that ACC willfully disregarded the terms of the 2009 Agreement, and that ACC "showed blatant disregard of performing quality services...." Complaint at ¶16. Finally, ACC asserts in Count III of the Complaint that LHI's actions justify an award of punitive damages. ACC seeks an award of attorney's fees as well.

LHI answered the Complaint by asserting various affirmative defenses and counterclaims. On February 25, 2011, the Court allowed LHI to amend its answer to include new affirmative defenses and counterclaims. Memorandum Opinion and Order (Doc. No. 79). Neither the previous affirmative defenses and counterclaims nor the new affirmative defenses and counterclaims are based on the circumstances surrounding the California bid. Instead, the new affirmative defenses and counterclaims are based on a bid proposal that ACC submitted to the Florida Army National Guard in April 2009.

LHI now moves for summary judgment arguing that it is entitled to summary judgment on the breach of contract and breach of the covenant of good faith and fair dealing claims because ACC materially breached the 2009 Agreement prior to the August 2009 termination letter by violating the unfair competition clause. The violations of the unfair competition clause allegedly occurred when ACC bid on the California contract and attended the Force Health Protection Conference. LHI also maintains that it is entitled to summary judgment on the punitive damages claim and ACC's request in the Complaint for an award of attorney's fees because Wisconsin law does not recognize those damages in breach of contract and breach of the covenant of good faith and fair dealing cases.

*B. Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C. Discussion*

As an initial matter, ACC maintains that it was unfairly surprised by LHI's allegation that ACC's bid on the California contract constituted a material breach of the 2009 Agreement.  ACC notes that its California bid was not mentioned in LHI's termination letter, was not set forth in the parties' initial disclosures in this case, was not referred to in the Joint Status Report and Provisional Discovery Plan (Doc. No. 18), and was not mentioned in LHI's pleadings.  ACC claims that it did not know that LHI would raise a defense based on ACC's California bid until Ms. Berger was deposed in January 2011.  LHI, however, submitted an excerpt of Ms. Hatch's October 2010 deposition in which she states that ACC's California bid was a reason for

terminating the 2009 Agreement. Considering that ACC knew about this reason for terminating the 2009 Agreement at least a couple of months prior to the filing of the Motion for Summary Judgment in January 2011, I find that ACC's allegation of surprise is insufficient to preclude the Court from reaching the merits of the Motion for Summary Judgment.

    *1. Count I: ACC's Breach of Contract Claim*

ACC contends in Count I of the Complaint that LHI violated the 2009 Agreement when LHI failed to provide ACC with a 180 day written notice that LHI intended to terminate the 2009 Agreement. In response, LHI argues that an immediate termination of the 2009 Agreement was justified because ACC had materially breached the 2009 Agreement's unfair competition clause when ACC bid on the California contract and manned a booth at the Force Health Protection Conference. In Wisconsin, "a material breach of contract releases the non-breaching party from performance of the contract." *International Production Specialists, Inc. v. Schwing America, Inc.*, 580 F.3d 587, 595 (7th Cir. 2009). A breach of contract "is material if it destroys the essential object of the agreement or deprives the non-breaching party of a benefit that the party reasonably expected." *Id*. Moreover, the question of whether a breach of contract is a material breach is a question of fact. *Id*. at 594.

LHI argues initially that the undisputed facts show that ACC breached the 2009 Agreement's unfair competition clause by submitting the California bid and attending the Force Health Protection Conference. LHI argues next that the undisputed facts demonstrate that those breaches were material. Then, LHI argues that it was not obligated to give ACC a 180 day notice prior to termination of the 2009 Agreement because ACC could not cure any of the breaches. In the alternative, LHI argues that even if it was obligated to comply with the notice of termination requirement, ACC's prior material breaches of the 2009 Agreement prohibit ACC

9

from claiming damages for LHI's alleged breach of the 2009 Agreement.

> *a. ACC's Alleged Violation of the Unfair Competition Clause by Bidding on the California Contract*

The unfair competition clause forbids ACC from contracting with the United States National Guard to perform any authorized services, i.e., dental services. However, ACC is allowed to contract with a third party if LHI is "disqualified from or otherwise elects not to pursue the business opportunity that is the subject of an agreement between [ACC] and a third party." Emphasis added. This provision consists of two disjunctive components: 1) ACC can enter into a third party contract if LHI is disqualified from the business opportunity that is the subject of the third party contract; or 2) ACC can enter into a third party contract if LHI elects not to pursue the business opportunity that is the subject of the third party contract.

LHI asserts that the first component was not met because LHI was qualified to submit a bid on the California contract. LHI maintains that it is undisputed that the California solicitation was open to large businesses like LHI if the California Army National Guard received less than four competitive bids from small businesses. In addition, LHI notes that the California Army National Guard "invited" LHI to bid on the California contract. LHI also argues that had ACC not submitted a bid, the number of qualified small business bids would have been three and the bid competition would have been open to large businesses, including LHI.

However, viewing the evidence in the light most favorable to ACC, questions of material fact exist as to whether LHI was disqualified from bidding on the California contract. Although both ACC (as a small business) and LHI (as a large business) were welcome to submit bid proposals for the California contract, it is undisputed that the California Army National Guard would consider the large business bids only if the California Army National Guard did not

receive a minimum of four bids from qualified small businesses. In other words, if there were four or more small business bids, only the small businesses would compete for the California contract. The intent of the bid solicitation was to award, if at all possible, the California contract to small businesses. ACC has submitted evidence that once all the bids were received, LHI's bid was in essence "disqualified" because there were four bids from qualified small businesses. The Court further notes that whether LHI was "invited" to bid on the California contract or was merely informed of the upcoming bid solicitation is not relevant to whether LHI's bid was subsequently disqualified based on the number of qualified small business bids. Moreover, ACC submitted evidence that ACC would not have withdrawn from the California contract even if LHI had indicated that ACC's bid on the California contract violated the unfair competition clause. Hence, LHI's argument that its bid would have been considered if ACC had not submitted a bid is mere speculation. In sum, a reasonable jury could find that ACC did not violate the unfair competition clause because LHI's bid was ultimately disqualified.

LHI also maintains that under the second component of the provision concerning third party contracts, ACC could not bid on the California contract because LHI "elected" to pursue the same contract. It is undisputed that LHI elected to pursue the California contract by submitting a bid. Nonetheless, despite LHI's request for ACC's subcontractor pricing on the California bid, ACC has presented evidence that it did not know that LHI was going to actually submit the bid until after ACC submitted its own bid. This evidence, when viewed in the light most favorable to ACC, raises a genuine question of material fact concerning whether ACC submitted its bid knowing that LHI had likewise elected to pursue the California contract. In other words, a reasonable jury could find that ACC did not violate the second component of the provision regarding ACC's ability to enter into contracts with third parties. Consequently, LHI

11

is not entitled to summary judgment on its assertion that ACC's bid on the California contract constituted a breach of the 2009 Agreement.

### b. ACC's Alleged Violation of the Unfair Competition Clause by Attending the Force Health Protection Conference

LHI further argues that ACC breached the 2009 Agreement when ACC violated the unfair competition clause by manning a booth at the Force Health Protection Conference, a conference attended by LHI's customers and sponsored by LHI's largest customer, Force Health Protection. LHI refers to that portion of the unfair competition clause which states that ACC cannot "compete, promote, participate in or engage in any activity or other business, either directly or indirectly" with any of LHI's known customers to perform dental services. Viewing the evidence in the light most favorable to ACC, I conclude that ACC has demonstrated that genuine questions of material fact exist as to whether ACC violated the unfair competition clause when it had a booth at the Force Health Protection Conference. First, although LHI customers may have attended the Force Health Protection Conference, ACC has shown that its marketing was not directed to LHI customers. Second, a question of fact arises as to whether ACC's mere presence at the Force Health Protection Conference constitutes indirect marketing involving LHI's customers. ACC notes that the unfair competition clause does not specifically prohibit ACC from being present at events where some of the participants are LHI customers. A reasonable jury could, therefore, conclude that ACC did not violate the unfair competition clause by manning a booth at the Force Health Protection Conference. Consequently, LHI is not entitled to summary judgment on its contention that ACC's booth at the Force Health Protection Conference breached the 2009 Agreement. Because LHI is not entitled to summary judgment on the issue of whether ACC breached the 2009 Agreement, the Court is not in a position to

determine if the undisputed facts support a determination that any of the alleged breaches were actually material.

### c. Termination of the 2009 Agreement Without 180 Days Notice

Finally, LHI argues that summary judgment should be entered in its favor on ACC's breach of contract claim because LHI was entitled to terminate the 2009 Agreement without notice. LHI premises this argument on the fact that ACC's alleged violations of the unfair competition clause were material breaches of the 2009 Agreement which ACC could not later cure. *See, e.g., LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (Pa. 2009) ("[W]hen there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary. ... "[R]equiring such notice before termination under such circumstances would be a useless gesture, as such a breach may not reasonably be cured."). However, the Court has already determined that genuine questions of material fact exist as to whether ACC violated the unfair competition clause and the Court does not reach the issue of whether any of the alleged breaches are material. Under these circumstances, it would be improper for the Court to grant summary judgment based on LHI's argument that its breach of the termination notice requirement was justified because of ACC's alleged material breaches of the 2009 Agreement and ACC's inability to cure the breaches.

LHI argues, in the alternative, that even if the Court concludes that LHI violated the 2009 Agreement by not providing notice prior to terminating the 2009 Agreement, ACC's prior material breaches of the 2009 Agreement preclude ACC from pursuing its own breach of contract claim for damages. *See, e.g., McBride v. Wausau Ins. Companies*, 500 N.W.2d 387,

388 (Wis. Ct. App. 1993) (a party who breaches a contract cannot recover under that contract). Again, since there are genuine issues of material facts regarding whether ACC violated the unfair competition clause and since the Court does not address the issue of material breaches, the Court cannot conclude, as a matter of law, that ACC cannot sue for damages resulting from LHI's alleged breach of the 2009 Agreement. LHI is, therefore, not entitled to summary judgment on its position that it was justified in immediately terminating the 2009 Agreement.

    *2. Count II: ACC's Claim for Breach of the Covenant of Good Faith and Fair Dealing*

Next, LHI contends that ACC's claim for breach of the covenant of good faith and fair dealing fails as a matter of Wisconsin law. Wisconsin "recognizes the implied contractual duty of good faith and fair dealing in commercial contracts. ... However, the implied covenant 'does not support an independent cause of action for failure to act in good faith under a contract.' ... Instead, the duty of good faith is meant to 'give the parties what they would have stipulated for' at the time of contracting if they could have foreseen all future problems of performance.'" *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965-66 (7th Cir. 2000) (internal citations omitted). Furthermore, a breach of the covenant of good faith and fair dealing cannot occur where "a contracting party complains of acts of the other party which are specifically authorized in their agreement," even if that other party acted with an improper motive. *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 431 N.W.2d 721, 726 (Wis. Ct. App. 1988). *See also JP Morgan Chase Bank v. Allen*, 2010 WL 1753335 *3 (Wis. Ct. App. 2010) (unpublished decision).

LHI contends that the undisputed evidence does not show that LHI breached the covenant of good faith and fair dealing when it terminated the 2009 Agreement. First, LHI asserts that it had the right to immediately terminate the 2009 Agreement when ACC materially breached the 2009 Agreement by violating the unfair competition clause. Second, LHI argues

14

that any alleged improper motive for LHI's termination of the 2009 Agreement, i.e., "pretextual" statements concerning ACC, does not support a breach of the covenant of good faith and fair dealing. Third, even if LHI's termination of the 2009 Agreement constituted a breach of the covenant of good faith and fair dealing, LHI maintains that ACC's prior material breaches of the 2009 Agreement preclude it from seeking damages as a result of LHI's alleged breach of that Agreement. ACC responds that because it has a viable breach of contract claim, it also has a viable claim for breach of the covenant of good faith and fair dealing.

Viewing the evidence in the light most favorable to ACC, a reasonable jury could find that LHI breached the termination provision of the 2009 Agreement by not providing ACC with a 180 day notice. *See supra*. Moreover, a reasonable jury could find that ACC did not breach the unfair competition clause when ACC submitted its California bid and attended the Force Health Protection Conference, thereby contradicting LHI's claim that ACC materially breached the 2009 Agreement. *See supra*. A reasonable jury could then determine that LHI acted in bad faith when it terminated the 2009 Agreement in violation of the termination provision of the 2009 Agreement without, in essence, any justification. Considering all of these genuine questions of material fact, the Court is reluctant to grant summary judgment on LHI's position that the claim for breach of the covenant of good faith and fair dealing fails as a matter of Wisconsin law.

   *3. Count III: ACC's Punitive Damages Claim*

Furthermore, LHI argues that ACC cannot recover punitive damages under Wisconsin law for breach of contract or breach of the covenant of good faith and fair dealing. *See Autumn Grove Joint Venture v. Rachlin*, 405 N.W.2d 759, 762 (Wis. Ct. App. 1987) ("Wisconsin courts have consistently held that punitive damages are not available as a remedy in a breach of

contract action."); *Entzminger v. Ford Motor Co.*, 177 N.W.2d 899, 903 (Wis. 1970) (Punitive damages are allowed for personal torts which disregard personal rights; "[t]he type of cases allowing punitive damages has been cases of assault and battery, slander and libel, seduction, malicious prosecution, breach of promise, and the like."). ACC argues, however, that the Court should not rely solely on the 2009 Agreement's choice of law provision stating that Wisconsin law governs the 2009 Agreement. ACC notes that LHI does not allege in Defendant Logistics Health, Inc.'s Amended Answer, Affirmative Defenses, and Counterclaims (Doc. No. 80) (Amended Answer) that Wisconsin law does not provide for punitive damages but instead LHI only asserts that it did not engage in conduct which justifies an award of punitive damages and that punitive damages would be limited by any applicable "cap." Alternatively, ACC argues that even if LHI is not bound by its allegations in the Amended Answer *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1985) supports ACC's contention that punitive damages are allowed no matter what the choice of law provision is in the 2009 Agreement.

ACC's arguments in support of its claim for punitive damages fail for several reasons. First, it is undisputed that the 2009 Agreement states that it will "be governed by and construed in accordance" with Wisconsin law. Unsigned Subcontractor Agreement at ¶18(f), (Doc. No. 64-3). Second, the parties stipulated in their Joint Status Report and Provisional Discovery Plan at 2 "that the law governing this case is: <u>Wisconsin state law</u>." Third, ACC does not provide any legal support for its contention that LHI was somehow required to plead Wisconsin choice of law as an affirmative defense. Fourth, *Mastrobuono* is not supportive of ACC's position that punitive damages are available despite the Wisconsin choice of law provision which would preclude punitive damages.

In *Mastrobuono*, the parties entered into a contract which contained a New York choice of law provision and an arbitration provision. Under New York law, only courts, not arbitrators, can award punitive damages. In a subsequent contractual dispute, a panel of arbitrators awarded punitive damages to the petitioners. The United States Supreme Court harmonized the choice of law provision and the arbitration provision by concluding that the law of New York encompasses the substantive rights and duties of the parties while the arbitration clause covers only the use of the arbitration process. Hence, the arbitration award of punitive damages was considered within the scope of the contract. *Mastrobuono* actually supports LHI because *Mastrobuono* held that the issue of whether to award punitive damages, like the issue in this case, is a substantive matter covered by the choice of law provision. *See also Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, ___ F.Supp.2d ___, 2010 WL 4340806 (D.N.M.) (rejected application of New Mexico law on issue of punitive damages when choice of law provision provided that New Jersey law be applied to substantive issues).

Finally, as the Tenth Circuit Court of Appeals has acknowledged, "the chosen law will govern 'unless there is no reasonable basis for their choice or ... the law ... chosen would be contrary to the fundamental policy of a state whose law would otherwise govern.'" *Century 21 Real Estate Corp. v. Meraj Intern. Inv. Corp.* 315 F.3d 1271, 1281 (10th Cir. 2003) (quoting *Hansen v. GAB Bus. Servs., Inc*., 876 P.2d 112, 113 (Colo. Ct.App.1994)). Where there is no contention that either of the above exceptions to the use of "the chosen law" is present and the choice of law provision governs the construction of the contract, as in this case, the choice of law provision governs the interpretation of the contract as well as the measure of damages. *Id*. (citing Restatement (Second) of Conflicts of Laws § 207 (1971)). In sum, Wisconsin law on punitive damages applies. Since the parties do not dispute that Wisconsin law precludes an

award of punitive damages in breach of contract and breach of the covenant of good faith and fair dealing cases, LHI is entitled to summary judgment on ACC's punitive damages claim.

*4. ACC's Request for an Award of Attorney's Fees*

Lastly, LHI asserts that attorney's fees are not recoverable under Wisconsin law. ACC expressly acquiesces to that assertion. Accordingly, summary judgment will be granted in LHI's favor as to ACC's request for an award of attorney's fees.

*D. Conclusion*

The Court will grant LHI's Motion for Summary Judgment in part. The Court will allow ACC to go forward with its breach of contract and breach of the covenant of good faith and fair dealing claims (Counts I and II). The Court, however, will grant summary judgment in LHI's favor as to ACC's punitive damages claim (Count III) and as to ACC's request in the Complaint for an award of attorney's fees.

IT IS ORDERED that:

1. Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 64) is granted in part; and

2. summary judgment will be granted in LHI's favor as to Count III of the Complaint and as to ACC's request in the Complaint for an award of attorney's fees.

_____
SENIOR UNITED STATES DISTRICT JUDGE

19